RICHARD TAYLOR *v.* THE MAYOR, ALDERMEN AND COMMONALTY
OF THE CITY OF NEW YORK.

Where the corporation of the city of New York, in leasing a pier, grant merely
the wharfage, or the mere right to collect wharfage from vessels which may
lie at or make fast to the pier—the grantee stipulating to pay an annual sum
for this right—the corporation is not relieved from liability to third persons
for injuries resulting from a failure to keep the premises in repair.

And this, although such lease may contain a covenant to repair on the part of
the lessee.

Otherwise, where the lease is a grant of the pier itself, vesting in the grantee
the exclusive possession for his own private benefit.

Whether, and how far, the corporation has authority to grant exclusive posses-
sion of the public piers?     *Quere.*

*It seems,* that in general, what are termed leases of the public piers in the
city of New York, are mere grants of the wharfage for a specified time, with
various covenants between the parties.

THIS action was instituted to recover damages for the loss
of a horse, alleged to have been occasioned by the neglect of
the corporation of New York to repair a pier situated at the
foot of Hammond street, in that city.

Upon the trial, in the Marine Court, it appeared that the
pier belonged to the corporation, but that at the time of the
accident the same was under a lease to one Edwards.   It did
not appear, by the return of the justice, whether the lease
was a lease of the pier itself, or merely of the right to collect
the wharfage of the same.

The court below rendered judgment for the plaintiff.   The
defendants appealed.

*Abraham R. Lawrence, Junior,* for the appellants, insisted,

I. That the plaintiff had failed to show that the defend-
ants were in possession of, or had control over the pier at the
time of the alleged accident.

That the pier was under a lease, and that, as to third par-

ties, the tenant, as occupier, is *prima facie* liable to the public for a neglect to repair, whatever private covenant or agreement there may be between him and the landlord. (*The Mayor, &c., of N. Y.* v. *Corlies*, 2 Sand. S. C. R. 303; *Paine* v. *Rodgers*, 2 H. Blackstone, 350; *Cheatham* v. *Hempson*, 4 Term, 18.)

II. There is no implied legal obligation resting upon the landlord to repair. (*Arden* v. *Pullen*, 10 Meeson & Welsby, 320.)

III. The wharfs and piers of the city of New York are not public streets, and the appellants are not bound to keep them in repair. (Laws of 1813, vol. 2, p. 435, §§ 231, 232.)

*Daniel T. Walden*, for the plaintiff.

BY THE COURT. WOODRUFF, J.—I think that the right of the plaintiff to recover from the defendants depends upon the nature of the instrument which, in the return herein, is called a lease to Edwards.

No copy of that lease is contained in the return, and we cannot, therefore, determine its effect. If it was a grant of the wharfage merely, or of the mere right to collect wharfage from vessels which should lie at, or make fast to the pier in question, the grantee in his turn stipulating to pay the defendants an annual sum for this right, I do not think it had any operation to relieve the defendants, as owners, from the the duty to repair. In such case, whether the obligation of the defendants result from the claim that the public piers are highways, or from the duty of an owner to repair his own pier, over which those who come lawfully to discharge thereat have a right to pass and repass, is not material.

And on the other hand, if the so called lease was a grant of the pier itself to Edwards, so as to vest in him the exclusive possession for his own private benefit, then I think the tenant, and not the landlord, is bound to repair, and liable to those who are injured by his neglect. That is the general rule where the lease is silent on the subject; and if, by the

terms of the lease, the landlord is to repair, then he is liable, and in some cases the tenant also.

But a grant of the wharfage, or of the right to collect the proper rates from vessels which may lie at or make fast to such pier, does not necessarily involve any such consequence. It does not, of necessity, give exclusive possession of the pier to the so called lessee, and the obligation of the owners to repair, I think remains, as between them and third persons, in full force. In such a grant, it would be immaterial whether there was o r was not a covenant between the parties in respect to the repairs; and though the grantee did covenant to repair, his covenant would not relieve the defendants any more than the covenant of a third person, who had nothing to do with the wharfage, would relieve them.

I am not prepared to say that the public piers are public highways, in such a sense that the corporation may not lease them so as to give exclusive possession to the tenant, within the distinction above stated,(*a*) and so that, in respect to the obligation to repair, they shall be governed by the same rules as other wharves around the city. All these wharves are in some sense public. Vessels, under certain regulations and subject to the payment of wharfage, may come and make fast thereto, (when they are not already occupied by another vessel,) and may discharge thereon; and this is a common right in all who navigate our waters, and all the wharves are subject to the ordinances of the city regulating the same. In other respects, I apprehend that the usual incidents of ownership attach thereto. Under the power of the corporation to regulate the use of wharves and docks, and especially where the property therein is vested in them, I think they may devote a particular pier to particular purposes, and give exclusive possession. This is constantly done to the ferry companies, who take exclusive possession under their leases, at a rent stipulated. The city is not, I think, liable for neglect to repair the ferry docks so leased.

(*a*) See *The Mayor, &c.,* v. *Rice, post.*—Rep.

It may be, that legislative authority would be necessary to authorize the corporation to devote any of the piers to a use wholly inconsistent with or infringing the common and public right of those who navigate our waters to come to our wharves, make fast and discharge thereat, under such regulations as the public interest might require, and subject to proper charges ; but if that be so, it does not follow that, subject to the public use, the piers may not be granted to a tenant whose possession would be entirely exclusive of the corporation itself, and of all others, except those who are exercising the public right referred to ; and if not, then in this respect the corporation would stand, in respect of their ownership, on the same footing as the owner of any other pier.

My conclusion is, that we cannot safely determine the questions involved in this appeal without having the so called lease to Edwards, or a copy thereof, before us.

We may not, perhaps, take judicial notice of the fact, but we are aware that, in general, what are called leases of the public piers are mere grants of the wharfage for a specified term, with various covenants between the parties, and such as, I think, would not operate to relieve the defendants from the duty to repair.

I think the case should stand over for a further return, so that, instead of a mere statement that a lease to Edwards was given in evidence, we may have the lease itself, or a copy.

Cause sent back for further return.